[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-12782
Non-Argument Calendar
_____

D.C. Docket No. 8:05-cr-00475-JDW-TGW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

THOMAS F. SPELLISSY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 2, 2021)

Before MARTIN, BRANCH and MARCUS, Circuit Judges.

PER CURIAM:

Thomas Spellissy, a former federal prisoner no longer in custody, appeals the district court's order denying his pro se petition for a writ of error coram nobis, 28 U.S.C. § 1651. On appeal, he argues that the district court abused its discretion in denying his petition because: (1) the government fabricated and suppressed certain evidence; (2) the court committed various errors under McDonnell v. United States, 136 S. Ct. 2355 (2016), Ocasio v. United States, 136 S. Ct. 1423 (2016); and Skilling v. United States, 130 S. Ct. 2896 (2010); and (3) the Supreme Court's intervening holding in Kelly v. United States, 140 S. Ct. 1565 (2020), established a new rule of law that invalidated the jury instructions. After thorough review, we affirm.

We review a district court's denial of a petition for a writ of error coram nobis for abuse of discretion, "keeping in mind that an error of law is an abuse of discretion per se." United States v. Peter, 310 F.3d 709, 711 (11th Cir. 2002) (quotations omitted). The abuse of discretion standard recognizes that there is a range of choices within which we will not reverse the district court, even if we might have reached a different decision. Siebert v. Allen, 506 F.3d 1047, 1049 n.2 (11th Cir. 2007).

The All Writs Act, 28 U.S.C. § 1651(a), grants federal courts the authority to issue writs of error coram nobis. United States v. Mills, 221 F.3d 1201, 1203 (11th Cir. 2000). A writ of error coram nobis is a remedy to vacate a conviction and is available, unlike relief under 28 U.S.C. § 2255, when the petitioner has served his sentence and is no longer in custody. Peter, 310 F.3d at 712. The coram nobis writ

2

is an extraordinary remedy available only "in compelling circumstances where necessary to achieve justice." Mills, 221 F.3d at 1203. A court may provide coram nobis relief if: (1) no other avenue of relief is available or has been available; and (2) the petitioner presents a fundamental error that made the proceedings irregular and invalid. Alikhani v. United States, 200 F.3d 732, 734 (11th Cir. 2000). Where other avenues of relief are or were available, a court may consider coram nobis relief only if a petitioner presents sound reasons for failing to seek relief earlier. Mills, 221 F.3d at 1204. By its nature, a jurisdictional error is of "such a 'fundamental character' as to render proceedings 'irregular and invalid.'" Peter, 310 F.3d at 715.

The error alleged for coram nobis relief cannot be one that has been "put in issue or passed upon." Moody v. United States, 874 F.2d 1575, 1576-77 (11th Cir. 1989). This is consistent with the law-of-the-case doctrine, under which both district and appellate courts are usually bound to follow a prior appellate decision in the same case. Thomas v. United States, 572 F.3d 1300, 1303 (2009). The law-of-the-case doctrine "generally operates to preclude a reexamination of issues decided upon appeal, either by the district court on remand or by the appellate court itself upon a subsequent appeal." Westbrook v. Zant, 743 F.2d 764, 768 (11th Cir. 1984) (quotations omitted). We've recognized three exceptions to the law-of-the-case doctrine, in cases where: "(1) the evidence on a subsequent trial was substantially different, (2) controlling authority has since made a contrary decision of the law

3

applicable to the issue, or (3) the previous decision was clearly erroneous and would work a manifest injustice." Id. at 768-69.

A writ of error coram nobis is "traditionally available only to bring before the court factual errors material to the validity and regularity of the legal proceeding itself, such as the defendant's being under age or having died before the verdict." Carlisle v. United States, 517 U.S. 416, 429 (1996) (quotations omitted). We've indicated that it is "difficult to conceive of a situation in a federal criminal case today" where coram nobis relief "would be necessary or appropriate." Lowery v. United States, 956 F.2d 227, 229 (11th Cir. 1992) (quotations omitted).

Indeed, we've located only one published case in which we granted coram nobis relief. Peter, 310 F.3d 709. In Peter, the issue on appeal was whether the Supreme Court's construction of "property" had rendered Peter's conduct non-criminal, and, if so, whether coram nobis relief was appropriate. Id. at 709-16. Peter had pleaded guilty to a charge of racketeering conspiracy based on predicate acts of mail fraud. Id. at 710. His mail fraud predicate acts were founded upon misrepresentations he made in license applications to a state regulator. Id. at 711. After his conviction, the Supreme Court ruled that licenses did not constitute property for the purpose of the mail fraud statute. Id. We concluded that the district court did not have jurisdiction to accept Peter's guilty plea because, based on the retroactive effect of the Supreme Court's decision that licenses were not "property"

4

under the mail fraud statute, Peter's actions had never violated the mail fraud statute and did not constitute criminal conduct. Id. at 715.

It is illegal under 18 U.S.C. § 371 for two or more persons to conspire either to commit any offense against the United States or to defraud the United States or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to affect the object of the conspiracy. 18 U.S.C. § 371. Under 18 U.S.C. § 201, it is illegal for a person to directly or indirectly, corruptly give, offer or promise anything of value to any public official or person who has been selected to be a public official, or offer or promise any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent to influence any official act. Id. § 201(b)(l)(A). The term "official act" is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." Id. § 201(a)(3).

In Kelly, local government officials were convicted of wire fraud, fraud on a federally funded program, and conspiracy, stemming from a scheme to impose traffic gridlock in a city by limiting its access lanes to a busy bridge over a four-day period to punish the city's mayor for refusing to endorse the governor's reelection bid. 140 S. Ct. at 1568-69, 1571. The Supreme Court held that wire fraud under §

5

1343 only prohibits deceptive schemes to deprive a victim of money or property, so the government must show that (1) the defendant engaged in deception, and (2) the object of the defendant's fraud was money or property. Id. at 1571-72. Relying on Skilling, the Supreme Court explained that "[s]ave for bribes or kickbacks (not at issue here), a state or local official's fraudulent schemes violate [§ 1343] only when, again, they are 'for obtaining money or property.'" Id. at 1572. The Court concluded that the scheme to realign the city's access lanes to the bridge did not involve taking governmental money or property, unlike a scheme to usurp a public employee's paid time, and thus, it could not support the defendants' convictions. Id. at 1572-73.

Here, the district court did not abuse its discretion in denying Spellissy's instant petition for writ of error coram nobis. The relief he seeks concerns his conviction for conspiracy to defraud the United States and to commit two offenses (bribery and wire fraud), in violation of 18 U.S.C. § 371. The conviction arose out of a general services agreement between Spellissy, his company Strategic Defense International, Inc. ("SDI"), and William Burke, a civilian contractor, to obtain preferential treatment for their clients. United States v. Spellissy, 243 F. App'x 550, 550 (11th Cir. 2007). The district court sentenced Spellissy to 15 months' imprisonment, and he was released from custody in January 2009. Since his conviction, Spellissy has filed numerous appeals in this Court, which has, in relevant part, affirmed the district court. See id.; see also, e.g., United States v. Spellissy,

6

710 F. App'x 392 (11th Cir. 2017); United States v. Spellissy, 438 F. App'x 780 (11th Cir. 2011); United States v. Spellissy, 374 F. App'x 898 (11th Cir. 2010).

In the first claim of the petition for coram nobis relief now before us, Spellissy argues that the government fabricated evidence to obtain a search warrant of his home without any probable cause, but this is the same argument that he previously made to this Court and that we rejected. See Spellissy, 374 F. App'x at 899 n.2. Further, Spellissy's argument that newly discovered evidence reveals that Burke was terminated due to a conflict of interest instead of for accepting a bribe does not establish any errors "of the most fundamental character" because the reason for Burke's termination has no effect on whether Spellissy and SDI conspired to bribe Burke for preferential treatment in procuring contracts. As for Spellissy's claim that Burke made false declarations to the grand jury, Spellissy did not demonstrate that there was no other avenue of relief available to him since, at trial, Spellissy was aware that Burke's trial testimony and grand jury testimony differed, and he could have raised it earlier.

Similarly, Spellissy's arguments based on Skilling, McDonnell, and Ocasio were previously either raised and rejected by this Court, or, in the case of Ocasio, rejected by the district court and dropped on appeal to us. See Spellissy, 710 F. App'x at 395; Spellissy, 438 F. App'x at 783-84. Spellissy has not demonstrated

7

either that controlling authority has since made a contrary decision, or that the previous decisions were clearly erroneous.

Lastly, we are unpersuaded by Spellissy's argument that Kelly created a new rule of law that invalidated his conviction because it required proof that the scheme was "for obtaining money or property by means of false of fraudulent pretenses, representations, or promises," citing the wire fraud statute, 18 U.S.C. § 1343. We previously held that the record in Spellissy's case reflected that "the proscribed activity . . . involved a scheme by Spellissy . . . to pay Burke for preferential treatment in procuring contacts. This remains proscribed activity, even after Skilling narrowed 'honest-services fraud' to include only bribe or kickback schemes." See Spellissy, 438 F. App'x at 783-84. Thus, as we've held, Spellissy engaged in deception to obtain money, and unlike in Kelly, Spellissy's fraudulent scheme involved bribery. See Kelly, 140 S. Ct. at 1572. Neither Kelly nor any other case Spellissy relies on affects his conspiracy conviction. Moreover, even if there was an error, it was harmless and not a fundamental one because nothing requires an indictment to expressly charge that the object of a conspiracy's underlying wire fraud is "for obtaining money or property."[1]

---

[1] As for Spellissy's claim that his counsel was ineffective for, inter alia, misunderstanding the charge in the indictment, we will not consider it because Spellissy raises it for the first time on appeal. See Dohrmann v. United States, 442 F.3d 1279, 1282 (11th Cir. 2006).

8

Accordingly, the district court did not abuse its discretion in denying Spellissy's petition for relief, and we affirm.

**AFFIRMED**.