[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10584

Non-Argument Calendar

_____

NATHANIEL BLANCHER,

Petitioner-Appellant,

*versus*

UNITED STATES OF AMERICA,

Respondent- Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cv-00457-JB-N

_____

Before JILL PRYOR, NEWSOM, and KIDD, Circuit Judges.

PER CURIAM:

Nathaniel Blancher, a federal prisoner, appeals the district court's denial of his 28 U.S.C. § 2255 motion in which he alleged that he received ineffective assistance of counsel. After careful consideration of the parties' briefs and the record, we affirm.

**I.**

In 2021, Blancher, a registered sex offender living in Mobile, Alabama, picked up a 14-year-old girl in Louisville, Kentucky, and drove her back to Mobile where he engaged in sexual activity with her. Law enforcement officers traced the child to Blancher's apartment and found her hiding in a bathroom. During a forensic interview, she reported that she and Blancher had engaged in sexual intercourse in his apartment. She said that she had communicated with him online for approximately three years and that he knew her age. On another occasion, Blancher had traveled to Louisville and taken her to a hotel, where they engaged in sex acts.

A federal grand jury charged Blancher with several crimes: (1) transporting a minor for criminal sexual activity, in violation of 18 U.S.C. § 2423(a) (Count One); (2) committing the crime charged in Count One while being required to register as a sex offender, all in violation of 18 U.S.C. § 2260A (Count Two); (3) traveling in interstate commerce with the intent to engage in illicit sexual conduct, in violation of 18 U.S.C. § 2423(b) (Count Three); and (4) committing the crime charged in Count Three while being

required to register as a sex offender, all in violation of 18 U.S.C. § 2260A (Count Four). Blancher was represented by appointed counsel.

Blancher pleaded guilty to all charges with a written plea agreement. The plea agreement listed the statutory penalty range for each offense. For Count One (transporting a minor for criminal sexual activity), it said that Blancher faced a "[m]andatory minimum of 10 years['] imprisonment" and a statutory maximum of life. Doc. 37 at 3.[1] It also said that Blancher faced the following other penalties: for Count Two (committing Count One while required to register as a sex offender), a mandatory-minimum sentence of 10 years' imprisonment to be served consecutively to his sentences on the other counts; for Count Three (traveling in interstate commerce with intent to engage in illicit sexual conduct), up to 30 years' imprisonment; and for Count Four (committing Count Three while required to register as a sex offender), a mandatory-minimum sentence of 10 years' imprisonment to be served consecutively to his sentences on the other counts. According to the plea agreement, Blancher "underst[ood] that pursuant to this plea he is facing a mandatory term of imprisonment of *at least* thirty (30) years." *Id.* at 5 (emphasis added).

In the plea agreement, Blancher represented that he was "freely and voluntarily" pleading guilty, and that the plea was not the result of any "promises[] or representations, apart from those

---

[1] "Doc." numbers refer to the district court's docket entries.

representations set forth" in the plea agreement. *Id.* at 3. He agreed that "[t]here have been no promises from anyone as to the particular sentence that" he would receive. *Id.*

In the plea agreement, the government agreed to recommend that Blancher receive a sentence at "the low end of the advisory sentencing guideline range as determined by" the district court. *Id.* at 8. But the plea agreement made clear that the government's recommendation was not binding on the district court. It explained that at the sentencing hearing the court would calculate Blancher's guidelines range. It cautioned that because the Sentencing Guidelines were "advisory," the court was not required to "sentence [him] in accordance with the Guidelines." *Id.* at 5–6. Blancher would not be permitted to withdraw his guilty plea if the district court decided to "var[y] from the advisory guideline range." *Id.* at 6. The plea agreement expressly stated that it created no right for him "to be sentenced in accordance with the Sentencing Guidelines . . . or within any particular guideline range." *Id.* Blancher indicated that he "fully underst[ood] that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely [within] the discretion of the [c]ourt." *Id.*

Blancher signed the plea agreement. By signing the plea agreement, he represented that he had read it and "carefully reviewed every part of it with [his] attorney." *Id.* at 10–11.

At the change-of-plea hearing, Blancher was placed under oath, and the district court reviewed the plea agreement. Blancher acknowledged that he had received a copy of the plea agreement

and reviewed it with his attorney. By signing the plea agreement, he acknowledged that he "fully underst[ood] the terms and conditions" of the plea agreement and "agree[d] with them." Doc. 67 at 4.

The court then reviewed with Blancher the statutory penalty range he was facing. It recited the penalty range for each count: for Count One, a mandatory minimum of 10 years' imprisonment and a maximum sentence of life; for Count Two, a mandatory minimum of 10 years' imprisonment to "be served consecutively to all other counts;" for Count Three, a maximum of 30 years' imprisonment; and for Count Four, a mandatory minimum of 10 years' imprisonment to "be served consecutively to all other counts." *Id.* at 6–7. Blancher confirmed that he understood the penalty ranges. The court then asked whether he "underst[ood] that, pursuant to this plea, [he is] facing a mandatory term of ***at least*** 30 years imprisonment?" *Id.* at 8 (emphasis added). Blancher answered, "Yes." *Id.*

The court also reviewed with Blancher what would occur at sentencing. It warned that the sentence ultimately imposed "might be different from any estimate [Blancher's] attorney or anyone else might have given [him]." *Id.* at 9–10. Blancher affirmed that he understood. The court advised him that the sentence imposed could be more severe than what he expected or what the government recommended. He again confirmed that he understood. He also represented that no one had made any promises to him related to the plea. The court accepted Blancher's guilty plea.

At the sentencing hearing, the district court grouped together Count One (transporting a minor for criminal sexual activity) and Count Three (traveling in interstate commerce with the intent to engage in illicit sexual conduct). *See* U.S. Sent'g Guidelines Manual § 3D1.2. For these counts, it calculated Blancher's guidelines range as 121 to 151 months' imprisonment. The court explained that for Counts Two and Four (committing the offenses charged in Counts One and Three while required to register as a sex offender), Blancher faced mandatory 10-year consecutive sentences. *See* 18 U.S.C. § 2260A (providing that when a person required to "register as a sex offender[] commits a felony offense involving a minor under section . . . 2423," he "shall be sentenced to a term of imprisonment of [ten] years in addition to the imprisonment imposed for the offense under that provision" and this sentence "shall be consecutive to any sentence imposed for the offense under that provision"). Blancher and the government jointly asked that the court impose a total sentence of 360 months' imprisonment.

The court imposed a total sentence of 480 months' imprisonment. This sentence consisted of 240 months total for Counts One and Three, a 120-month sentence for Count Two, and a 120-month sentence for Count Four. The court directed that the sentences for Counts Two and Four would run consecutively with each other and with the sentences imposed on Counts One and Three. The court explained that it imposed an upward variance because of the seriousness of Blancher's conduct, which included communicating with the child over a lengthy period and engaging

24-10584                Opinion of the Court                7

in sexual conduct with her on more than one occasion. The court also considered the need to protect the public. It noted that a few months before committing this offense Blancher had pleaded guilty to possessing child pornography in state court and was on probation for that offense. While on probation, Blancher was allowed only limited internet access, yet he managed to continue communicating with the child and then traveled to see her.

Several months after he was sentenced, Blancher, proceeding *pro se*, filed a § 2255 motion. He claimed that he received ineffective assistance of counsel because his attorney had wrongly advised him that if he pleaded guilty his sentence would not exceed 30 years.[2] He asserted that he did not know at the time of his guilty plea that the 10-year sentences on Counts Two and Four could run consecutively to each other and pointed out that the government had agreed that a 30-year sentence was reasonable. He also alleged that "there was nothing" in the district court's plea colloquy giving him notice that he could receive a sentence that was longer than 30 years. Doc. 50 at 4. He claimed that if he had known that his

---

[2] Blancher raised other claims in his § 2255 motion, including that his counsel was ineffective in failing to raise a double jeopardy challenge to 18 U.S.C. § 2260A. He asserted that the government was punishing him twice for the same conduct by charging him with substantive offenses in Counts One and Three as well as charging him in Counts Two and Four with committing those offenses while failing to register as a sex offender. He also asserted that his counsel was ineffective in failing to raise vagueness or equal protection challenges to § 2260A. The district court rejected these claims as meritless. Because Blancher received no certificate of appealability for these claims, we discuss them no further.

sentence could be longer than 30 years, he would have insisted on going to trial.

A magistrate judge prepared a recommendation that the district court deny the § 2255 motion without holding an evidentiary hearing or ordering a response from the government. She explained that the record conclusively showed that Blancher pleaded guilty despite having been advised that he faced a potential sentence longer than 30 years. The plea agreement made "it clear that a sentence in excess of 30 years was quite possible" because it "expressly advised" that 30 years "was the absolute *minimum* that he faced" and warned that he could be sentenced to life. Doc. 52 at 15 (emphasis in original). And although Blancher now said that his attorney and the prosecutor had promised him that he would not receive a sentence longer than 30 years, in signing the plea agreement, he acknowledged that no one had promised him anything about his sentence. The magistrate judge concluded that the court could deny Blancher's motion without an evidentiary hearing and without a response from the government because the record "conclusively show[ed]" that he was entitled to no relief. *Id.* at 12. She nevertheless recommended that the court issue a certificate of appealability as to this issue.

In her recommendation, the magistrate judge advised Blancher to file written objections within 14 days. She warned that if he failed to object, he would waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. In the absence of a proper objection, these issues

would be reviewed on appeal for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

Blancher failed to file objections. The district court adopted the magistrate judge's recommendation, denying and dismissing with prejudice the § 2255 motion. It granted him a certificate of appealability on the question whether the court correctly dismissed his claim that "counsel rendered unconstitutionally ineffective assistance by assuring him that he would not be sentenced to more than 30 years['] imprisonment if he pled guilty to all the counts of the indictment" without holding an evidentiary hearing or ordering a response from the government. Doc. 54 at 1–2.

This is Blancher's appeal.

## II.

When reviewing a district court's denial of a § 2255 motion, we review questions of law *de novo* and findings of fact for clear error. *Thomas v. United States*, 572 F.3d 1300, 1303 (11th Cir. 2009).

Although district courts often must hold evidentiary hearings when reviewing § 2255 motions, no hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Although a court may order the government to respond to a § 2255 motion, the court is not required to order a response. *See* Rule 4(b), Rules Governing § 2255 Proceedings.

When a party fails to object to a magistrate judge's report and recommendation, he "waives the right to challenge on appeal

the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1. "In the absence of a proper objection, however, the court may review on appeal for plain error." *Id.* Plain error requires error that is obvious, that "affect[s] substantial rights of the defendant," and that "seriously affect[s] the fairness, integrity, or public reputation of a judicial proceeding." *United States v. Humphrey*, 164 F.3d 585, 588 & n.3 (11th Cir. 1999).

### III.

The United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel includes the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish ineffective assistance of counsel, a movant must demonstrate that (1) counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Id.* at 687. A court deciding an ineffective assistance claim need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Id.* at 697.

To establish prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had

some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted). Instead, "[c]ounsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* (internal quotation marks omitted).

In the context of a guilty plea, to satisfy *Strickland's* prejudice requirement a movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The Supreme Court has warned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). "Judges should instead look to contemporaneous evidence to substantiate a [movant's] expressed preferences." *Id.* In addition, there is a strong presumption that a defendant's statements made under oath at a plea colloquy are true. *See Winthrop-Redin v. United States*, 767 F.3d 1210, 1217 (11th Cir. 2014).

In this appeal, Blancher challenges the district court's denial of his § 2255 motion based on lack of prejudice. We review this issue for plain error only because he failed to object to the magistrate judge's recommendation despite being warned about the consequences of failing to object. *See* 11th Cir. R. 3-1.

Here, we cannot say that the district court plainly erred when, without holding an evidentiary hearing or receiving a response from the government, it denied the § 2255 motion. Even

accepting as true Blancher's allegation that his attorney failed to advise him that he could receive a sentence of more than 30 years, he cannot show that but for his attorney's advice he would have insisted on going to trial.

After pleading guilty and receiving a lengthy sentence of 40 years, Blancher now says that he would not have pleaded guilty if he had known that he could receive a sentence of more than 30 years. But contemporaneous evidence from the time of the guilty plea shows that Blancher understood that his sentence could be more than 30 years. *See Lee*, 582 U.S. at 369. Indeed, both the written plea agreement and the plea colloquy show that Blancher knew and understood that he could receive a sentence of up to life imprisonment yet decided to plead guilty. The plea agreement, which Blancher admitted that he reviewed and understood, listed the penalty range that he faced on each count and thus reflected that he knew he faced a maximum sentence of life on Count One. On top of that, at the change-of-plea hearing, the district court reviewed the maximum penalty that Blancher faced for each count and advised him that he faced a life sentence on Count One. Moreover, Blancher was warned both in the plea agreement and at the change-of-plea hearing that 30 years was the *minimum* sentence that he faced.

Blancher nevertheless argues that he did not understand that he could receive a sentence longer than 30 years because his attorney and the prosecutor had agreed that a 30-year sentence would be reasonable. But in the plea agreement, he affirmed that "[t]here

have been no promises from anyone as to the particular sentence" he would receive. Doc. 37 at 3. He also acknowledged that he lacked "any right" to receive a particular sentence, the decision about what sentence to impose would be made solely by the district court, and he could not withdraw his guilty plea if the district court decided to impose an upward variance. *Id.* at 6. Similarly, he confirmed at the change-of-plea hearing that he understood that the court would determine his sentence, the sentence could be different from any estimate provided by his attorney, and he could not withdraw his plea if the court did not accept the sentencing recommendation in his plea agreement.

To summarize, the record conclusively shows that Blancher pleaded guilty knowing that he could receive a life sentence and that the court was not bound to impose a total sentence of 30 years simply because his attorney and the government had agreed that this sentence was reasonable. Blancher therefore cannot show a reasonable probability that if his attorney had advised him that he could receive a sentence of up to life or that the court was not required to impose a 30-year sentence, he would not have pleaded guilty.[3] *See United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001)

---

[3] Blancher also says that he was never warned that he could face separate ten-year consecutive sentences on Counts Two and Four. He says that he mistakenly believed that he could receive only one ten-year sentence that covered both counts. We fail to see how this argument helps Blancher establish prejudice. Regardless of Blancher's beliefs about the stacking of his consecutive sentences for Counts Two and Four, he was plainly on notice that he could

(rejecting claim that defendant received ineffective assistance of counsel when pleading guilty because his attorney allegedly failed to advise him of maximum sentence when the court advised the defendant at the change-of-plea hearing that he faced a maximum sentence of life and could not rely on his counsel's prediction of his sentence). Thus, the district court did not err when it denied Blancher's § 2255 motion without holding an evidentiary hearing or ordering a response from the government. We affirm.

**AFFIRMED.**

---

receive a sentence of more than 30 years because he knew that he could receive a life sentence for Count One.